

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

November 27, 2017

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Harold Levine</u>
            16 Cr. 715 (JSR)

Dear Judge Rakoff:

      The United States respectfully submits this letter in connection with the restitution obligations of defendants Harold Levine ("Levine") and Ronald Katz ("Katz"), stemming from the sentencing and restitution hearing ("the Hearing") conducted before the Court on November 11, 2017.

      **1.  Background**

      As the Court recognized at the Hearing, the Court's restitution determination centers on two items of income that went unreported by both Levine and Katz.  The Government's position is that both items constituted unreported income by Levine that generated unpaid taxes subject to a restitution order of this Court.  Both of those items of income were concededly generated from tax shelter transactions in which Levine participated as a Herrick Feinstein tax partner and which Levine directed, through wire transfer instructions, into partnerships in which he then enjoyed a 50-50 ownership interest with co-defendant Katz.  The first amount was a $280,000 fee that stemmed from the UNO Estates transaction tax shelter transaction, which Levine caused to be sent to a bank account of HRK Real Estate, an entity co-owned by Levine and Katz. *See* Hearing Tr. 3-4; 7-9.  Moreover, in connection with that transaction, Levine caused the preparation, on the Herrick Feinstein computer system, of a phony invoice in the name of King Louie – Katz's wholly owned entity.  *Id*. at 8.  There is no evidence that this invoice was shared or discussed with Katz by Levine.

      The second item of income was a $450,000 tax shelter fee that Levine caused to be sent from the Herrick Feinstein escrow account in or about April 2006 to RKH Real Estate, another entity co-owned by Levine and Katz (through their limited liability entities).  Hearing Tr. 4 (Levine counsel acknowledging $450,000 amount).   That $450,000 fee (together with a $75,000 amount that Levine also caused to be routed to RKH, which Levine concedes constitutes unreported

income to him[1]) was not reported by Levine to the IRS despite the fact that the full $525,000 was used by Levine to purchase a house for his paramour, using the funds contained in the HRK bank account.  Thus, although Levine and Katz engaged in subsequent transactions through the HRK entity, there is no dispute that Levine caused HRK funds to be utilized to secure a personal benefit (that is, securing a home for his paramour) for himself.

## 2. Tax and Restitution Principles

### A. Income Tax

Where a taxpayer has dominion and control over diverted funds, they are includable in the taxpayer's gross income under section 61(a). *United States v. Goldberg,* 330 F.2d 30, 38 (3d Cir.1964); *Davis v. United States,* 226 F.2d 331, 334–335 (6th Cir.1955).  Stated otherwise, "A gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.' " *James v. U.S.,* 366 U.S. 213, 218 (1961) (quoting *Rutkin v. United States,* 343 U.S. 130, 137 (1952)).  When examining bank account transactions to ascertain income, courts have recognized that the taxpayer's gross income includes deposits into all accounts over which the taxpayer has dominion and control, not just deposits into the taxpayer's personal bank accounts. See *Price v. Commissioner,* T.C. Memo. 2004–103, 2004 WL 859198 (2004); *Cohen v. Commissioner,* T.C. Memo. 2003–42, 2003 WL 403067 (2003); *Woodall v. Commissioner,* T.C. Memo. 2002–318, 2002 WL 31890042 (2002); *Woods v. Commissioner,* T.C. Memo. 1989–611, 1989 WL 134222 (1989), *affd. without published opinion*, 929 F.2d 702 (6th Cir.1991). A taxpayer has dominion and control over an account when the taxpayer has the freedom to use its funds at will. *See Rutkin v. United States,* 343 U.S. at 137.

Significantly, courts have also recognized that the "legal test for taxable income is dominion and control, and that test in its terms excludes consideration of what happens to income after it flows from the taxpayer's hands." *Wood* v. *United States,* 863 F.2d 417, 419 (5th Cir.1989). *See also Carione* v. *United States,* 368 F.Supp.2d 186, 192 (E.D.N.Y.2005). "In determining whether a taxpayer enjoys 'complete dominion' over a given sum, the crucial point is not whether his use of the funds is unconstrained during some interim period.  The key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Commissioner of Internal Revenue v. Indianapolis Power & Light Co.,* 493 U.S. 203, 210 (1990). *See also Corliss v. Bowers,* 281 U.S. 376, 378 (1930) (finding that taxing is not so much concerned with title as it is with actual command over property taxed-the actual benefit for which the tax is paid).

### B. Restitution

Restitution is generally not available as a component of a sentence for a defendant convicted solely of Title 26 offenses.[2]  But where, as here, the parties agree in a plea agreement that the defendant shall make restitution, the Court is empowered to order restitution as part of the

---

[1] *See* Levine Sentencing Memo, ECF Docket # 37, at 33 ("[O]nly $75,000 of the [$525,000 of the] funds at issue should have been reported by [Levine] to the IRS ….").

[2] Absent an agreement to pay restitution, the Court is, however, empowered to order restitution as a component of supervised release.

criminal sentence. *See* 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement"). The statutory restitution framework also allows the sentencing court to impose joint and several liability. Indeed, 18 U.S.C. 3664(h) provides as follows: "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." The Second Circuit has recognized the joint and several liability principle set forth in the foregoing section. *United States v. Nucci,* 364 F.3d 419 (2d Cir. 2004); *United States v. Lucian,* 347 F.3d 45, 54 (2d Cir. 2003).

### 3. Discussion

Application of the foregoing principles would support a finding that Levine is responsible for restitution with respect to both the taxes due on the $280,000 and the $525,000 in full. As the facts concerning the diverted fee income make clear, Levine – and Levine alone – exercised exclusive control over the fee income when it left the Herrick Feinstein escrow account destined for bank accounts of Levine's choosing. At the time of those diversions, Levine was free to choose, without any fear of having to repay the funds, where the funds would go. Based on these simple facts, the fee income should be treated as Levine's alone. Such a result is particularly called for with respect to the H.F. Allen fee, as the full $525,000 sent by Levine to RKH was used to buy a home for his paramour, thereby benefitting Levine immediately after his diversion of the fees.

The fact that Levine caused the fees to be sent to partnerships or entities he owned with Katz does not require a different result. An assignment or transfer of income over which a taxpayer has control does not make the funds any less income to the transferor – because Levine had the right and power to direct where that income was sent. Stated otherwise, since the seminal case of *Lucas* v. *Earl*, 281 U.S. 111, 114 (1930), it has been clear that income is taxed to the person who earns it, regardless of what arrangements he makes to divert the payment of it elsewhere. Thus, because it was Levine's involvement with the tax shelter transactions that gave rise to the payment of the fees, Levine should be taxed on the full amount.

Even if the Court were to decide that Levine should not be held exclusively responsible for the taxes owed on the UNO and H.F. Allen fees, Levine should be made jointly and severally responsible for the taxes on those amounts. Levine certainly understood that the amounts were not reported on his own returns and, pursuant to the corrupt relationship Levine struck with Katz, would not be picked up as income by Katz, as well. Joint and several responsibility is thus entirely appropriate, in order to make sure the IRS is made whole by either Levine or Katz.

### 4. Levine's Responsibility for Interest on his Tax Obligation

As noted above, as part of his plea agreement, Levine agreed, pursuant to 18 U.S.C. § 3663(a)(3), to pay restitution to the IRS "as a result of the pecuniary losses caused by the defendant's conduct stemming from [the defendant's participation in the Count One and Three offenses] in an amount determined by the Court, but not less than $500,001." Plea Agreement, at 2 (attached hereto as Exhibit A). We respectfully submit that, because the "losses" caused by

Levine's offenses include the not only the unpaid taxes but also the time value of those unpaid taxes, the interest owed by the defendants should also be part of the restitution order.

In *United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011), the Court made clear that the Mandatory Victim Restitution Act allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation 'in the full amount of each victim's losses.'" (quoting 18 U.S.C. § 3664(f)(1)(A))). *See also United States v. Fumo*, 655 F.3d 288, 321 (3d Cir. 2011) ("[I]n order to make a victim whole, prejudgment interest may be necessary to 'allow an injured party to recoup the time-value of his loss.'" (quoting *William A. Graham Co. v. Haughey*, 646 F.3d 138, 145 (3d Cir. 2011))). This core principle – adding interest in order to allow the victim to be made whole – is no less applicable in criminal tax cases. As the Eighth Circuit reasoned in *United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013):

> Perry contends that the district court lacked statutory authority to include $348,376.75 in interest in the restitution order. We disagree. In fashioning a restitution order, the district court must "order restitution to each victim in the full amount of each victim's losses ...." 18 U.S.C. § 3664(f)(1)(A) (emphasis added), a statute made applicable to restitution ordered as a special condition of supervised release by 18 U.S.C. § 3556. Federal tax law imposes interest on tax delinquencies to compensate the government for the time-value of its loss. See 26 U.S.C. § 6601. Accordingly, the district court did not abuse its discretion by including interest in a restitution order intended to compensate the IRS as a victim for the full amount of its losses from Perry's evasion of income taxes owed for the 2001–2004 tax years. *Accord United States v. Ellefsen*, 655 F.3d 769, 782 (8th Cir. 2011) (affirming a restitution award to the IRS that included interest); *United States v. Hassebrock*, 663 F.3d 906, 926 (7th Cir. 2011) (same); *United States v. Qurashi*, 634 F.3d 699, 703–04 (2d Cir. 2011).

Given the foregoing authority, this Court should include interest as part of its ultimate restitution order. And the fact that the IRS has the power to commence deficiency proceedings in the future and assess additional taxes, penalties and interest (as recognized elsewhere in the plea agreement) does not mean that this Court is unempowered to do so. Indeed, that language in the plea agreement is simply a recognition of another mechanism by which the IRS is entitled to seek not only additional taxes, but also interest and penalties – the latter of which this Court may not include in its restitution order. Levine should not be allowed to tie up the IRS is civil tax proceedings to impede or prevent the full payment of interest, when this Court has the power to make the IRS whole now.

Accordingly, because the defendant has concededly deprived the IRS of the time value of the unpaid taxes, any restitution order should include the interest due on the tax deficiency amount determined by the Court. *United States v. Qurashi*, 634 F.3d at 703–04. That interest amount can be computed by the Revenue Agent assigned to the case, and included in a proposed restitution order submitted by the Government in the immediate wake of this Court's determination of the restitution amounts.

In conclusion, Levine should be made responsible for the full amount of taxes due on the UNO Estates ($280,000) and H.F. Allen ($525,000) fees. In the alternative, Levine should be made jointly and severally responsible for those amounts, together with co-defendant Katz.

          Respectfully submitted,

          JOON H. KIM
          Acting United States Attorney

              /s/
          Stanley J. Okula, Jr.
          Special Assistant U.S. Attorney
          Daniel S. Noble
          Assistant U.S. Attorney
          Tel. Nos.: (212) 637-1585/2239

cc:    Gerald Lefcourt, Esq.
        Sheryl E. Reich, Esq.